IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **RENE-MARIE G. REITH** | § | |
| | § | |
| VS. | § | Civil Action No. 4:05cv33 |
| | § | (Judge Schell/Judge Bush) |
| **TXU CORPORATION, ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendants TXU Corporation and Robert Half International Inc.'s Motions for Summary Judgment (Docket ## 41, 42). Having considered the motions, Plaintiff's response, and Defendants' replies, the Court finds as follows.

**Facts**

Plaintiff, a deaf individual, applied for a position with Robert Half International, Inc. ("RHI") in June of 2001. Plaintiff was hired as an employee of OfficeTeam, a division of RHI which offered temporary employment services. In August of 2001, Plaintiff accepted a position through RHI at TXU Corporation ("TXU"). TXU had entered into a staffing agreement with RHI to correct errors related to a newly implemented billing system. The position, as Plaintiff understood it, was temporary-to-hire, which meant that there was a possibility that TXU may, at some point, offer Plaintiff full-time employment.

When first assigned to work at TXU, Plaintiff worked in the billing group, opening mail, sorting mail, and entering data into the computer system. The assignment ended in January of 2002. In March of 2002, Plaintiff accepted a temporary assignment through RHI with a company called Cambridge, which assignment ended in August of 2002. Plaintiff was again assigned to the billing department at TXU in September of 2002, where he remained until January of 2004. It is from

1

Plaintiff's second assignment at TXU that the present lawsuit arises. Plaintiff knew that the assignment was temporary in nature, but was told that it could possibly turn into a permanent position. While working at TXU, Plaintiff was paid by RHI, received benefits through RHI, filled out time sheets for RHI, and had his social security taxes paid by RHI. Plaintiff never interviewed with TXU, never submitted a resume to TXU, and never applied for employment with TXU.

During Plaintiff's second term at TXU, he performed his job duties well. In fact, during his second term, RHI recognized him as "Candidate of the Month." RHI also raised Plaintiff's rate of pay. Plaintiff's pay increase from RHI had no effect on the rate RHI charged TXU for Plaintiff's services. During his second term, TXU managers and supervisors generally regarded Plaintiff as a good worker. Plaintiff enjoyed working at TXU and asked TXU to provide him with additional training and more challenging assignments to that he could increase his value to the company.

Plaintiff admits that he can read lips in French and that he can read lips with respect to limited English words, such as "yes," "no," "good morning," and "hello" Plaintiff can understand and communicate with American Sign Language ("ASL"). He can speak some English words, but claims that his ability to communicate by speaking is substantially limited due to his hearing impairment. Plaintiff can also communicate by reading and writing notes and emails.

Plaintiff claims that he was harassed during his second term at TXU. He specifically complains about the following incidents: (1) One of his coworkers would take his food out of the microwave before it finished cooking; (2) A coworker shot rubber bands at him; (3) Coworkers laughed at him when he took two pieces of a birthday cookie; (4) A coworker pulled Plaintiff's chair out from under him when he sat down; (5) A coworker got in Plaintiff's face on one occasion and mouthed words, then walked away; (6) Coworkers laughed at Plaintiff after he shaved his mustache;

(7) Plaintiff felt that his coworkers were not being as productive as he was; (8) One coworker hoarded more than his fair share of work; (9) A coworker pulled Plaintiff's coat off of his head while he was resting, shook him, and slapped him on the arm; (10) Plaintiff felt that a coworker was gossiping about him; (11) One coworker gave Plaintiff work late in the day; and (12) A coworker removed Excel, a program not essential to Plaintiff's duties, from his computer. Plaintiff claims that in some instances he would complain and the behavior would stop. In other instances, he would not complain. Whether the behavior ceased or not, he rarely received feedback from RHI or TXU as to whether the complaints had been addressed. He claims to have complained, through his roommate, about the taunting on numerous occasions.

Plaintiff claims that he made numerous requests for interpreters while at TXU. While he admits that he could perform his day-to-day tasks without assistance, Plaintiff claims to have requested an interpreter on more than one occasion for group meetings and training sessions. Neither TXU nor RHI provided Plaintiff with an interpreter when requested. On one occasion, Plaintiff's roommate attended a training session and interpreted for him without charge. When TXU subsequently requested the roommate's assistance, he refused unless he would be compensated for missing work. Plaintiff was told on one occasion that he was responsible for providing his own interpreter. Plaintiff claims that some of those who received training were ultimately promoted. Plaintiff admits that, even absent an interpreter at the meetings and training sessions, he was able to continue performing the tasks assigned to him.

In January of 2004, Doug Adler, the billing manager at TXU, informed Plaintiff that his temporary assignment had ended. Plaintiff was told that he and three coworkers were no longer needed at TXU. RHI attempted to secure more work for Plaintiff at TXU, but none was available.

Plaintiff was subsequently offered a number of temporary assignments with other RHI clients, but he accepted none of them. Plaintiff claims that he could only receive assignments when in front of his computer, and that with respect to some assignments, the time for accepting expired before he became aware of the assignment. Plaintiff declined certain assignments because they either payed too little, were too short in duration, or did not involve the type of work he wanted to do. Plaintiff eventually stopped contacting RHI on a weekly basis as required.

Plaintiff filed the present suit on January 27, 2005, claiming that Defendants discriminated against Plaintiff in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, *et seq*. Plaintiff claims that Defendants violated the ADA by engaging in disability based harassment and by constructively demoting, failing to promote, wrongfully terminating, and failing to accommodate him. Both Defendants have moved for summary judgment.

### **Standard**

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party satisfies its burden by "pointing out to the district court... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts

showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment will be appropriate.  *Celotex*, 477 U.S. at 323. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)(citations omitted).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.*

### **Plaintiff's Employer**

Defendant TXU first moves for summary judgment on the ground that it was not Plaintiff's employer, and that Plaintiff therefore lacks standing to sue it under the ADA.  42 U.S.C. §§ 12111(4), 12112(a);  *see also, Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 642 (7th Cir. 2004)(ADA and ADEA protect employees but not independent contractors).  The Fifth Circuit has held that, when determining whether an employment relationship exists within the meaning of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, a court should apply a hybrid economic realities/common-law control test.  *Deal v. State Farm Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118-19 (5th Cir. 1993); *Mares v. Marsh*, 777 F.2d 1066 (5th Cir. 1985)(applying test to Title VII case).  While this case involves the ADA rather than the ADEA, the Court notes that the definition of "employer" is similar in both statutes.  *See* 29 U.S.C. § 630(b); 42 U.S.C. § 12111(5)(A).  Furthermore, the Fifth Circuit has applied the test to cases involving Title VII, 42 U.S.C. 2000e, *et seq.*, the employment discrimination statute which often guides courts in application of the ADA.  *See generally, Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229 (5th Cir. 2001)

(modeling ADA harassment claim after Title VII harassment claim); *McInnis v. Alamo City. College Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000) (applying Title VII *McDonnell Douglas* burden shifting framework to ADA case). The Court therefore finds that the economic realities/common-law control test is the appropriate test for identifying an employer in ADA cases.

The Fifth Circuit has held that, when applying the economic realities/common-law control test, the right to control an employee's conduct is the most important consideration. *Deal*, 5 F.3d at 119. Factors considered in determining the level of control include the right to set an employee's work schedule, the right to supervise an employee, and the ultimate right to hire or terminate an employee. *Id.* "The economic realities component of [the] test focuses on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* The Fifth Circuit affirmed the district court's ruling in *May v. Kelly Servs., Inc.*, 2004 WL 533951 (N.D. Tex. 2004) that, in an employment discrimination case, a person paid by a temporary employment agency to perform sales for Onstar Corporation was an employee of the agency rather than Onstar Corporation. *May v. Kelly Servs., Inc.*, 108 Fed. App'x 932 (5th Cir. 2004).

In this case, Plaintiff admits that RHI paid him, withheld taxes on his behalf, and offered him benefits. While Plaintiff worked on the TXU premises and was largely supervised and trained by TXU, RHI retained the power to hire, fire, or promote Plaintiff. RHI, rather than TXU, raised Plaintiff's hourly rate and even selected Plaintiff as employee of the month. While TXU ultimately determined when it no longer needed Plaintiff's temporary services, TXU was not able to terminate Plaintiff. In fact, when Plaintiff left TXU, he remained an RHI employee and RHI continued to try to find work for Plaintiff. Between his assignments at TXU, Plaintiff was assigned by RHI to work

at another client, Cambridge. The economic realities therefore suggest that Plaintiff was an RHI employee. While TXU had some control over setting Plaintiff's schedule and supervising him, the power to make ultimate employment decisions regarding Plaintiff was solely reserved to RHI. In fact, even while Plaintiff was working for TXU, RHI retained the authority to fire or transfer him. That this was an actual power rather than a meaningless clause in a contract is evidenced by the fact that, when Plaintiff complained of harassment at TXU, RHI offered to transfer him.

TXU has likewise submitted the staffing agreement between it and RHI, which states, in pertinent part:

> RHI CONSULTING will, as may be requested, provide its employees ("Loaned Employees") to perform specific assignments for a limited duration to meet the needs of [TXU's] requesting department ("Department") for peak and special staffing requirements.
>
> .....
>
> All loaned employees will be actual employees of RHI CONSULTING and not independent contractors or employees of any other firm.
>
> .....
>
> RHI CONSULTING, with regard to its employees, assumes and retains sole and complete responsibility and liability for compliance with any an all federal, state, and local antidiscrimination statutes, including, but not limited to...the Americans with Disabilities Act....

(RHI Exb. 6 at pgs. 2, 4, 8). Furthermore, Plaintiff signed an employment application with RHI which states "If employed as a temporary or contract employee, I understand that I will be an employee of my RHI division and not of any client." (RHI Exb. 8 at pg. 2). The Court finds sufficient evidence that Plaintiff was an employee of RHI rather than TXU.

Plaintiff argues that the Court should apply the "superficially distinct entities" test to

determine whether RHI and TXU are joint employers. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983). The four factors considered under the test are whether: (1) the entities have interrelated operations; (2) there is centralized control of labor relations; (3) the entities share common management; and (4) there is common ownership and financial control. *Id.* In Title VII cases, courts primarily focus on the second factor. *Id.* Even under this test, the Court does not find that TXU could be considered Plaintiff's employer. RHI and TXU were two distinct entities. TXU was but one of many clients to whom RHI supplied temporary employees. RHI retained the power to hire, fire, and transfer employees and was even solely responsible for guaranteeing protections under federal, state, and local laws. In *Trevino*, 20-25% of a chemical company's employees were former employees of a related company which provided maintenance and operating staff. *Id.* at 399. Furthermore, unlike the present case, in *Trevino*, there was evidence that the chemical plant exercised considerable control over the other company's employees. *Id.* at 404. While TXU signed Plaintiff's time sheets and supervised Plaintiff, the Court does not find that TXU and RHI shared control of labor relations such that the companies were joint employers. Regardless, the Court finds the more recently articulated economic realities/common-law control test to be more applicable to the case at hand, and under that test, the Court finds that Plaintiff was not an employee of TXU. Therefore, Plaintiff's claims against TXU should be dismissed.

## Disability Discrimination

Both Defendants have moved to dismiss Plaintiff's claim of disability discrimination. Plaintiff may prove disability discrimination with either direct or indirect evidence, but in order to survive summary judgment on his discrimination claim, Plaintiff must first establish a *prima facie*

case. To establish a *prima facie* case of disability discrimination with direct evidence, a Plaintiff must show (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subjected to an adverse employment action because of his disability. *Edwards v. Wal-Mart Stores, Inc.*, 247 F.3d 241 (5th Cir. 2001) (quoting *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999). Although Plaintiff argues that he should be able to meet his *prima facie* case by establishing the three above listed elements, the Court does not find this to be a case involving direct evidence of discrimination.

In a case involving indirect evidence, the Court follows the burden shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and modified by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). *See Rachid v. Jack in the Box*, *Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (finding that *Desert Palace* modified *McDonnell Douglas* with respect to ADEA cases); *McInnis,* 207 F.3d at 279-80 (applying *McDonnell Douglas* to ADA case). When using indirect evidence, a plaintiff may establish a *prima facie* case by showing that he: (1) was disabled or regarded as disabled; (2) was qualified for the job; (3) was subjected to an adverse employment action; and (4) was replaced by or treated less favorably than non-disabled employees. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003); *Edwards,* 247 F.3d at 241. The defendant must then articulate a legitimate non-discriminatory reason for terminating the plaintiff. *Id.* If the defendant meets its burden, the plaintiff must create an issue of material fact that either: (1) the defendant's reason is a not true but is a pretext for discrimination; or (2) the defendant's reason, while true, was but one reason for its conduct, and another reason was the plaintiff's protected characteristic. *Rachid*, 376 F.3d at 312

Defendants argue that Plaintiff has failed to meet the first prong of his *prima facie* case by failing to show that he is limited in a major life activity. Defendants rely on Plaintiff's statements

9

that his disability is akin to a communication barrier, that he is able to communicate through other means, and that he can drive and care for himself. Plaintiff argues that he is disabled because he is limited in the major life activities of listening, hearing, and communicating.

Disability under the ADA is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (2). Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing speaking, breathing, learning, and working. *Hamilton v. Sw. Bell Tele. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998)(citing 29 C.F.R. 1630.2(i)). The determination of whether an individual is disabled is not based on the name of the diagnosis or impairment, but on the effect of the impairment on the individual's life. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999).

The Court finds that Plaintiff has established a fact issue as to the first element of his *prima facie* case. While most would consider deafness to be a *per se* disability, Plaintiff is capable of performing many major life activities. Plaintiff is capable of communicating through reading, writing, and sign language. Nonetheless, Plaintiff is unable to hear and has difficulty speaking clearly. His limitations are uncorrected and substantial. Furthermore, Plaintiff has put forth evidence that others regarded him as being impaired. While some workers at TXU apparently believed that Plaintiff could read lips, all knew that Plaintiff could not hear or speak clearly and fluently. Plaintiff has established that he had a disability and was regarded by his coworkers as being disabled.

No party disputes that Plaintiff was qualified for the temporary position at TXU. After Plaintiff completed his first assignment at TXU, he was again accepted as a temporary employee

when the need arose. TXU allowed Plaintiff's second temporary assignment to continue for more than 16 months. Plaintiff's assignment ultimately ended, not because of poor performance, but because there was no more work to be done. RHI acknowledged Plaintiff's capabilities by naming him the employee of the month while he worked at TXU and by raising his pay. After Plaintiff's second term at TXU was complete, RHI attempted to find more work for Plaintiff. The evidence of record indicates that Plaintiff was extremely qualified for the job at issue.

Plaintiff must next establish that he was subjected to an adverse employment action. Under the discrimination statutes, adverse employment actions are ultimate employment decisions such as hiring, firing, denying leave, discharging, failing to promote, demoting, and actions affecting compensation. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). An employment action is not adverse unless it affects job duties, compensation, or benefits. *Id.* The discrimination statutes do not, however, address every decision by an employer which may have some effect on an ultimate employment decision. *Id.* When an employer takes action that only limits an employee's opportunity for a promotion or transfer, such does not rise to the level of an adverse employment action. *Id.*; *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995) (denial of desk audit, which restricted Plaintiff's promotional opportunities, was not an ultimate employment decision).

Plaintiff was never terminated from RHI. In fact, after Plaintiff's assignment at TXU ended, RHI continued to search for suitable temporary positions for Plaintiff. Plaintiff turned a number of positions down. Ultimately, Plaintiff stopped contacting RHI on a weekly basis as required, therefore abandoning his employment. RHI took no action which could constitute failing to promote Plaintiff, but rather, RHI named Plaintiff as employee of the month and gave him a pay raise while

11

he was working at TXU. Finally, RHI took no part in TXU's decision to end Plaintiff's assignment, which the evidence suggests ended because there was no more work to be done as the billing problem was corrected.

The Court has previously found that TXU was never Plaintiff's employer and that TXU cannot therefore be liable for violating the ADA with respect to Plaintiff. Nonetheless, the Court finds that none of TXU's actions rose to the level of adverse employment actions. Plaintiff has cited no case law to support a finding that ending a temporary employment assignment rises to the level of an adverse employment action. Plaintiff was not fired from his job, but only ceased working at TXU. Furthermore, TXU has submitted competent evidence that any training sessions Plaintiff missed did not adversely affect his job duties. Even Plaintiff admits that he was able to perform his job as well, if not better, than his fellow "hearing" employees. Plaintiff only argues that he missed opportunities at promotion because he did not have an interpreter at the training sessions. When an employer takes action which denies a Plaintiff an opportunity at promotion, such action does not rise to the level of an adverse employment action. *Dollis*, 77 F.3d at 782. Furthermore, the evidence suggests that Plaintiff, a temporary employee, was not subject to promotion within TXU. Therefore, even if TXU could be considered Plaintiff's employer, Plaintiff could not make a *prima facie* case of discrimination against it.

Plaintiff has likewise failed to meet the fourth element of his *prima facie* case. While he testified that he had heard from someone at TXU that he had been replaced, he has offered no competent evidence in support of this position. To the contrary, Defendants have offered evidence that Plaintiff was not replaced. (Adler Dep. at pg. 84; Kooiman Dep. at pg. 115). Plaintiff was terminated with two other employees, neither of whom were hearing impaired. RHI had offered

evidence that it attempted not only to secure alternative employment for Plaintiff, but also that it attempted to secure additional employment at TXU for Plaintiff. Plaintiff has failed to show that he was replaced by anyone.

Plaintiff has likewise failed to show that TXU hired other similarly situated employees while refusing to hire Plaintiff. The fact is that Plaintiff never applied for a position with TXU. Although Plaintiff claims that some RHI employees began working at TXU, the evidence suggests that those employees actually applied for positions with TXU. TXU had no independent obligation to consider Plaintiff for a permanent position. The Court finds that Plaintiff's claim for disability discrimination should be dismissed.[1] As Plaintiff has failed to establish a *prima facie* case, the Court need not engage in a burden shifting analysis.

## Failure to Accommodate

The ADA requires employers to make reasonable accommodations for qualified individuals with disabilities unless the employer can show that such an accommodation would pose an undue hardship. 42 U.S.C. § 12112(b)(5)(A); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997). Employers must provide such reasonable accommodations, including changes to procedures and performance requirements, as would enable the disabled individual to perform the essential functions of his job. *Burch*, 119 F.3d at 314. The term "reasonable accommodation" includes the provision of qualified readers and interpreters. 42 U.S.C. 12111(9). However, such accommodations need not be provided when they are not necessary to the performance of the disabled employee's job

---

[1] This includes Plaintiff's claim for failure to promote and wrongful termination. Plaintiff's disability discrimination claims for failure to accommodate and harassment are discussed separately hereafter. To the extent Plaintiff raised discrimination claims for constructive demotion and denial of overtime, such claims should be dismissed pursuant to Local Rule CV-7(d) for Plaintiff's failure to respond to Defendants' Motions for Summary Judgment on such claims.

functions. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1995) (hypothetical hearing impaired assembly worker who could perform job functions without accommodation would not require any accommodation); *see also Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1137 (8th Cir. 1999) (company was not required to provide deaf employee with interpreter when he could perform the essential functions of his position without one). If an accommodation is required, the employer need not provide the accommodation requested, as long as the accommodation provided will enable the employee to perform the essential functions of his job. *Id.*

It is a disabled individual's responsibility to request an accommodation. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 112 (5th Cir 2005). Once a disabled person requests an accommodation, the employer is obligated to engage in an interactive process with the employee to determine what the most reasonable accommodation would be. *Id.* If failure to engage in the interactive process leads to a failure to reasonably accommodate the employee, the employer has violated the ADA. *Id.*

Plaintiff requested an interpreter for certain training sessions and group meetings. Plaintiff claims that his requests were either denied outright or that he was promised an interpreter and, when one was not provided, was told that the session was not important. Plaintiff's roommate, Robert Galligher, who uses ASL but is not a certified interpreter, interpreted for him at one training session, although Plaintiff claims that the interpretation was not satisfactory. Plaintiff was also provided with written materials and PowerPoint slides from the presentations. Plaintiff received one-on-one training in certain instances, and both TXU and RHI communicated with Plaintiff through written notes and emails. Therefore, while Plaintiff was not provided with the exact accommodation requested, there is evidence that he was provided with some form of accommodation.

Plaintiff admits that he was at all times able to perform the essential functions of his job. The evidence suggests that Plaintiff performed his job functions extremely well. Plaintiff admits that the training sessions for which he was not provided an interpreter would not have assisted him in performing his assigned tasks, but may have enabled him to perform new and more challenging work. However, there is no indication that such work was actually available to Plaintiff. Furthermore, the ADA only requires employers to accommodate employees with respect to their current job functions. And whether or not RHI or TXU engaged in an interactive process to accommodate Plaintiff is immaterial, since a failure to engage in such a process will only result in liability if the employee is not reasonably accommodated. Plaintiff was capable of performing his essential job functions and was therefore reasonably accommodated. The Court finds that Plaintiff's claim for failure to accommodate should be dismissed.

### **Harassment**

To prevail on a disability harassment claim, Plaintiff must establish: (1) that he belongs to a protected group; (2) the he was subjected to unwelcome harassment; (3) that the harassment was based on his disability; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action. *Gowesky*, 321 F.3d at 509. The harassment alleged must "be sufficiently pervasive and severe to alter the conditions of employment and create an abusive working environment." *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 236 (5th Cir. 2001); *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998). Mere teasing, offhand comments, and minor isolated incidents generally will not be sufficient to affect a term or condition

of employment. *Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999). Conduct is not actionable unless it is both objectively and subjectively offensive. *Id.* Furthermore, the conduct complained of must be so severe and pervasive that it destroys one's opportunity to succeed in the workplace. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). The Court must consider all of the circumstances, including the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance. *Flowers*, 247 F.3d at 236; *Shepherd*, 168 F.3d at 874.

Plaintiff claims that he was harassed as follows: (1) One of his coworkers would take his food out of the microwave before it finished cooking; (2) A coworker shot rubber bands at him; (3) Coworkers laughed at him when he took two pieces of a birthday cookie; (4) A coworker pulled Plaintiff's chair out from under him when he sat down; (5) A coworker got in Plaintiff's face on one occasion and mouthed words, then started laughing; (6) Coworkers laughed at Plaintiff after he shaved his mustache; (7) Plaintiff felt that his coworkers were not being as productive as he was; (8) One coworker hoarded more than his fair share of work; (9) A coworker pulled Plaintiff's coat off of his head while he was resting and slapped him on the arm; (10) Plaintiff felt that a coworker was gossiping about him; (11) One coworker gave Plaintiff work late in the day; (12) A coworker removed Excel, a program not essential to Plaintiff's duties, from his computer; and (13) Plaintiff was promised an interpreter for training sessions, but one was never provided. While the Court finds that Plaintiff belongs to a protected group and was subjected to unwelcome harassment, the Court does not find that most of the incidents cited by Plaintiff constitute disability-based harassment. The Court finds that the allegations that a coworker got in Plaintiff's face and mouthed words and that

Plaintiff was promised an interpreter but never provided one are the only allegations of harassment that could conceivably be based on his disability. While, because of his deafness, Plaintiff may have been less likely to perceive that his chair was being pulled out from under him or that someone was taking his food from the microwave before the bell rang, the Court does not find that these forms of harassment were specifically targeted to Plaintiff's disability. While many of the antics alleged were immature and offensive, Plaintiff has not sufficiently established that they were based on his disability. *See Hester v. Van Chevrolet Co., Inc.*, 1998 WL 118149, at *2 (N.D. Tex. Mar. 4, 1998) (employee's contention that he was asked to make coffee, while possibly harassing, was not sufficiently linked to his disability, partial deafness).

The Court further finds that the harassment complained of was not sufficiently severe or pervasive to support a cause of action. The majority of the incidents complained of were isolated and ended upon Plaintiff's complaint to either RHI or the offending party. None of the harassment affected Plaintiff's ability to do his job, and, after Plaintiff's assignment ended, he sought to return to TXU, where he stated he wanted to work "forever." The Excel program which was removed from Plaintiff's computer was not necessary for the performance of his job duties. There is some evidence that many of Plaintiff's coworkers believed he could read lips,[2] and Plaintiff has failed to clearly establish that those who mouthed words to him were attempting to mock him. In fact, he admits that some of his coworkers were simply frustrated with writing notes. In the cited instance when a coworker, Thao, mouthed words to Plaintiff, Plaintiff states that he wrote a note to Thao stating that he couldn't understand him and that the mouthing stopped. Regardless, the Court finds that

---

[2]Plaintiff can, in fact, read lips in French and admits that he can read some words in English, which ability varies depending on the speaker and speed at which the words are spoken.

mouthing words at a hearing impaired person, even if done with the intent to mock, is the equivalent of teasing or making an offhanded comment, which is not actionable under the ADA. *Shepherd,* at 874 (5th Cir. 1999); *see also Hester v. Van Chevrolet Co., Inc.*, 1998 WL at *2 (calling hearing impaired employee "deaf old man" and repeatedly speaking into employee's deaf ear so as to make him turn in circles were not sufficiently severe or pervasive actions to sustain ADA harassment claim). The Court further finds that Defendants' failure to provide an interpreter after promising to do so did not amount to severe and pervasive harassment. The training was not necessary for the performance of Plaintiff's job duties, and did not affect his ability to work.

The Court acknowledges that some of the incidents could be considered threatening or humiliating. Plaintiff may have felt physically threatened or humiliated when a coworker shot rubber bands at him, when a coworker pulled his chair out from under him, when a coworker s removed his jacket from his head, shook him, and slapped him on the arm, and when a coworker mouth words in his face. These incidents appear to be isolated rather than recurring, however, and, as noted above, the Court does not find that these incidents constitute disability harassment.

Finally, while Plaintiff alleges that RHI was aware of each of the alleged instances of harassment, the evidence does not support his contention. He claims to have reported the harassment through his roommate, Robert Galligher, but RHI's records only indicate that Galligher reported the incident when Plaintiff's jacket was removed from his head. Galligher stated that the records were probably accurate. Upon hearing of the incident, RHI asked Plaintiff if he would like to be transferred and he stated that he wanted to stay at TXU. He was not touched by the offending employee after he made the complaint.

The Court finds that Plaintiff has failed to establish a claim of disability harassment. None

of the actions complained of were severe or pervasive enough to support a harassment claim, and while a few of the incidents were immature and dangerous, the incidents were isolated and not related to Plaintiff's deafness. While RHI was aware of one incident of harassment, Plaintiff has not established that it was aware of any of the others. Nonetheless, each incident of harassment was short-lived and ended when Plaintiff complained to the either TXU, RHI, or the offending party.

## **RECOMMENDATION**

Based upon the foregoing, the Court finds that Defendants' Motions for Summary Judgment should be GRANTED and that the above titled and numbered cause of action should be DISMISSED WITH PREJUDICE.

Within ten (10) days after filing of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 4th day of April, 2006.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE